IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BUDHAGIRL, LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:24-cv-2077-S |
| YIWUSHIJULIMAOYIYOUXIANGONGSI and RAN SHAOXIONG, | § § § § | |
| Defendants. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff BuDhaGirl, LLC has filed a Motion for Default Judgment against Defendants Yiwushijulimaoyiyouxiangongsi d/b/a Hengli Group and Ran Shaoxiong. *See* Dkt. No. 8. Alternatively, BuDhaGirl moves for a court order authorizing service of Defendants via e-mail. *See id.*

United States District Judge Karen Gren Scholer has referred this motion to the undersigned United States Magistrate Judge for hearing, if necessary, and determination under 28 U.S.C. § 636(b). *See* Dkt. No. 10.

For the following reasons, the Court should deny Plaintiff BuDhaGirl's Motion for Default Judgment [Dkt. No. 8] and its alternative request for a court order authorizing service of Defendants via e-mail.

### Background

This case concerns alleged copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA"). 17 U.S.C. § 501 *et seq.*

-1-

Plaintiff BuDhaGirl filed a complaint in this Court on August 15, 2024, against Defendants Yiwushijulimaoyiyouxiangongsi d/b/a Hengli Group and Ran Shaoxiong on the basis of federal question jurisdiction. *See* Dkt. No. 1.

BuDhaGirl alleges that Defendants, who are Chinese nationals, sold products that infringe BuDhaGirl's registered copyrights on Amazon. *See id.* at 1-4.

BuDhaGirl states that it delivered Notifications of Claimed Infringement to Amazon, who then forwarded the Notifications to Defendants. *See* Dkt. No. 8 at 2. And, after receiving the Notifications, Defendants sent Amazon DMCA Counter Notifications, in which Defendants disputed copyright infringement, agreed to accept service of process, and consented to personal jurisdiction in Texas. *See id.*

Amazon provided BuDhaGirl with Defendants' contact information as follows:

Full Legal Name: 冉少雄
Email Address: j92c9@outlook.com
Mailing Address: 浙江省义乌市北苑 道畈东小区131幢1单元407
Phone Number: 15958912531

*Id.*

BuDhaGirl contends that it properly served process on Defendants by sending the complaint and summonses to the email address identified above on November 6, 2024. *See id.* at 3; Dkt. No. 7 at 7.

After Defendants failed to respond, BuDhaGirl filed this motion for default judgment. *See* Dkt. No. 8.

**Legal Standards & Analysis**

I. <u>**Default Judgment**</u>

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013). The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan*, 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.*

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except

-4-

regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

### A. The procedural requirements for default judgment have not been met.

Plaintiff BuDhaGirl has not satisfied the prerequisites for entry of default judgment against Defendants Yiwushijulimaoyiyouxiangongsi d/b/a Hengli Group and Ran Shaoxiong.

At the outset, BuDhaGirl's motion for default judgment is deficient because it never filed a request for entry of default against Defendants. And, so, the Clerk of Court has not entered Defendants' default – a requirement to obtain a default judgment, as prescribed by the Fifth Circuit and the Federal Rules of Civil Procedure. *See New York Life Ins. Co.*, 84 F.3d at 141; FED. R. CIV. P. 55(a).

And, assuming that BuDhaGirl moved for entry of default and the Clerk of Court entered default against Defendants, BuDhaGirl's motion for default judgment still fails because it has not properly served Defendants.

BuDhaGirl asserts that it properly served process on Defendants by sending the complaint and summonses to their email address provided by Amazon (j92c9@outlook.com) on November 6, 2024. *See* Dkt. No. 8 at 3; Dkt. No. 7 at 7.

But, for the reasons discussed below, the undersigned finds that BuDhaGirl's method of service was not proper.

## II.  Service on Foreign Defendants via Email

A court cannot exercise jurisdiction over a defendant that is not properly served. *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 906-07 (5th Cir. 1995)

BuDhaGirl acknowledges that Defendants are Chinese nationals. *See* Dkt. No. 8 at 2. And, so, Federal Rule of Civil Procedure 4(f), which governs service on foreign defendants, controls here.

Rule 4(f) states that service may be accomplished:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; 2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice: ...; or 3) by other means not prohibited by international agreement, as the court orders.

FED. R. CIV. P. 4(f).

"The United States and China are both signatories to the Hague Convention, a multilateral treaty intended 'to simplify, standardize, and generally improve the process of serving documents abroad.'" *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404 (N.D. Tex. 2020) (quoting *Water Splash, Inc. v. Menon,* 581 U.S. 271, 271 (2017)).

The Hague Convention's prescribed service methods are "mandatory and compliance is required 'in all cases to which it applies.'" *Prem Sales*, 494 F. Supp. 3d at 409 (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)).

The Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters art. 1, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638.

Under the Convention, "there are generally two types of cases where the Convention does not apply: cases where the address of the person to be served is unknown, and cases that do not require the transmission of judicial documents abroad." *Prem Sales*, 494 F. Supp. 3d at 409 (citing Hague Convention art. 1).

Here, the applicability of the Convention turns on whether any exceptions apply. But, insofar as BuDhaGirl seeks to invoke the "unknown" address exception, the undersigned is not persuaded.

While "there appears to be no binding authority in the Fifth Circuit that clearly establishes a standard for determining when an address is 'known' versus when an address is 'unknown' within the meaning of the Hague Convention," *Compass Bank*, 287 F.R.D. at 394, various federal district courts have dealt with this issue, *see, e.g.*, *Opella v. Rullan*, No. 10–21134–CIV, 2011 WL 2600707, at *5 (S.D. Fla. June 29, 2011) ("[A]n address is not 'known' within Article I of the [Hague] Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in

attempting to discover that address."); *RPost Holdings, Inc. v. Kagan,* No. 2:11–cv–238–JRG, 2012 WL 194388, at *1, *2 (E.D. Tex. Jan. 23, 2012) (granting substituted service on defendant only after plaintiff had attempted service through the Hague Convention on the address associated with defendant's online business website and had requested defendant's address from defendant's attorney and been refused); *Chanel, Inc. v. Song Xu,* 2010 WL 396357, at *1, *3 (rationalizing that, because plaintiff hired a private investigator in China who determined that the physical addresses provided by defendants did not identify street names, numerical street addresses or building numbers and that the addresses interchanged postal codes and sections for various cities, and who also conducted further searches of public databases and directories in China, unable to locate defendants, their addresses were unknown); *Malone v. Highway Star Logistics, Inc.,* No. 08–cv–01534–RPM–KLM, 2009 WL 2139857, at *2 (D. Colo. July 13, 2009) (ruling that, due to plaintiff's attempted service through the Hague Convention and through private process servers at defendants' various foreign addresses on their vehicle registration certificates, their vehicle liability insurance cards, and their drivers' licenses, as well as at the addresses provided by defendants, the court was satisfied that defendants' addresses were unknown).

After surveying the cases cited above and others, the *Compass Bank* court found that "the standard set out (either directly or indirectly) seems to require, at the least, that a plaintiff put forth reasonable diligence in attempting to discover defendant's address, before finding the party can circumvent the methods for service of process

authorized by the Hague Convention." *Compass Bank*, 287 F.R.D. at 395; *see also Baker Hughes Inc. v. Homa*, No. CIV.A. H-11-3757, 2012 WL 1551727, at *17 (S.D. Tex. Apr. 30, 2012) (explaining that a plaintiff should not seek alternative service just "to expedite the process and avoid additional costs of service" and, rather, needs to show why the facts and circumstances necessitate the district court's intervention; cleaned up).

BuDhaGirl alleges that it was given "largely ambiguous contact information written in Chinese with inconsistent" or "inexact translations using commercial translation tools." Dkt. No. 8 at 3-7 (cleaned up). And it suggests that the information was "suspect" because the mailing address had no zip code. *See id.*

But there is no evidence in the record, apart from attempting to translate the Chinese address provided by Amazon, to suggest that BuDhaGirl has used diligence in locating Defendants.

And, so, the undersigned cannot conclude, at this time, that Defendants' address is "unknown" and cannot recommend that the Court allow BuDhaGirl to use an alternative method of service under Rule 4(f)(3).

And, because the "unknown" address exception is not applicable to the present case, the Hague Convention's methods of service control.

As described by another judge in this district,

> "[t]he [Convention's] primary innovation" is the requirement that each member state must "establish a central authority to receive requests for service of documents from other countries," *Schlunk*, 486 U.S. at 698 (citing Hague Convention art. 2). The central authority then must serve the documents in accordance with the internal law of the receiving state,

> or "by a particular method requested by the applicant," provided that such method is compatible with the receiving state's laws. Hague Convention art. 5. Following service, the central authority must provide the applicant with a certificate of service. *Id.* art. 6. If service is not successful the certificate must list the reasons that prevented service. *Id.*
>
> The Convention specifies alternative forms of service, provided the receiving country does not object to those types of service. Permissible methods include service on "diplomatic or consular agents," service through "consular channels," service on "judicial officers," and direct service "by postal channels." *Id.* art. 8–10. The Convention also allows countries to designate additional methods of service, either unilaterally within their own borders or through agreements with other nations. *Id.* art. 11, 19.
>
> If a plaintiff attempts to serve a foreign defendant through a central authority and the central authority fails to provide a certificate of service, the plaintiff may move for default judgment six months after initiating service. *Id.* art. 15. Under this scenario, rather than granting default judgment, the presiding judge is also authorized to "direct a special method of service" in accordance with the Federal Rules of Civil Procedure. *See* Notes of Advisory Committee on 1993 Amendment to Federal Rule of Civil Procedure 4, subdivision (f)(3).

*Prem Sales*, 494 F. Supp. 3d at 409-10 (cleaned up).

Here, there is no evidence in the record to suggest that BuDhaGirl's counsel attempted to comply with the Hague Convention's requirements in serving the Chinese Defendants. Rather, BuDhaGirl attempted to serve them by sending the complaint and summonses to their Amazon-provided email address. *See* Dkt No. 7 at 7.

Insofar as BuDhaGirl contends that its retroactive service via e-mail was proper under Rule 4(f)(3), which provides that service on a foreign defendant may be effectuated "by other means not prohibited by international agreement, as the court orders," that argument fails because this Court never authorized such service.

And, so, the undersigned finds that, to date, BuDhaGirl has not effectuated

-10-

proper service on Defendants.

The undersigned turns to BuDhaGirl's alternative request for relief – that it be prospectively permitted to serve the Chinese Defendants via e-mail.

BuDhaGirl asks the Court to authorize service under Rule 4(f)(3), "which allows a party to use alternative methods of service if (1) the party obtains permission of the court, and 2) those methods are not otherwise prohibited by international agreement." *Compass Bank v. Katz*, 287 F.R.D. 392, 393-94 (S.D. Tex. 2012) (citing FED. R. CIV. P. 4(f)(3)).

In support of BuDhaGirl's request, it cites *Nagravision SA v. Gotech Int'l Tech, Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018), for the proposition that service by e-mail is not prohibited by the Hague Convention. *See* Dkt. No. 8 at 5-6.

In addressing the same issue, a judge in this district court found that *Nagravision* "does not stand for the general proposition that email service on a Chinese defendant is permitted under the Convention." *Prem Sales*, 494 F. Supp. 3d at 413.

The undersigned agrees that *Nagravision* is distinguishable because, as the *Prem Sales* court observed, the plaintiff in *Nagravision* initially attempted service under the Hague Convention – which BuDhaGirl has not done here. *See id.* at 413 (citing *Nagravision SA v. Gotech Int'l Tech. Ltd.*, Civil Action No. 4:15-cv-00403, Dkt Nos. 18, 19 (S.D. Tex. Dec. 21, 2015)). And the district court in *Nagravision* authorized service by email only after the Central Authority failed to serve the defendants after eight months. *See Nagravision SA v. Gotech Int'l Tech. Ltd.*, Civil Action No. 4:15-cv-

00403, Dkt Nos. Nos. 21 & 23 (S.D. Tex. Feb. 1, 2016). And, so, email service was not prohibited service by international agreement in that context because it was "supported by Article 15 of the Convention, which authorized the court to order alternative service under Federal Rule of Civil Procedure 4(f)(3)." *Prem Sales*, 494 F. Supp. 3d at 413.

Turning to whether the Hague Convention authorizes email service on Chinese defendants in other circumstances, the *Prem Sales* court answered in the negative, ultimately concluding that "email service is not permitted under the Convention because it is inconsistent with and not authorized by the Convention's delineated service methods." *Prem Sales*, 494 F. Supp. 3d at 417 (explaining that "the Convention prohibits service methods that are not expressly prohibited but are nonetheless inconsistent with the Convention's authorized processes.").

It cited other federal district courts that reached the same conclusion. *See, e.g.*, *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 987 (N.D. Cal. 2020) (noting that "[s]ervice by e-mail on defendants in China is not one of the Hague Service Convention's approved methods of service" and "[t]hus, unless an exception to the Convention applies, service by e-mail on the China-based defendants" is prohibited); *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 472 (D. Mass. 2020) (holding "e-mail service on [China-based] defendants is prohibited by the Hague Convention"); *CRS Recovery, Inc. v. Laxton*, No. C 06-CV-7093 CW, 2008 WL 11383537, at *1–2 (N.D. Cal. Jan. 8, 2008) ("An order allowing email service on a defendant located in China would contravene the [Hague Convention] ….").

The undersigned is persuaded by the *Prem Sales* court's reasoning and finds that the Hague Convention does not permit email service on a Chinese defendant.

And, so, BuDhaGirl's alternative request to serve Defendants via email should be denied.

### III.   Timeframe for Service

BuDhaGirl's next attempt at service will need to comply with Rule 4(f), which governs service on foreign defendants.

"In most instances where a foreign defendant has not been served in compliance with the Hague Convention, the favored remedy is to allow the plaintiff the appropriate time to properly serve the defendant." *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2013 WL 12087219 (W.D. Tex. Aug. 5, 2013) (cleaned up).

Courts in this district have provided plaintiffs between 16 and 20 weeks to properly serve foreign defendants. *See, e.g., L.K. ex rel. Yarborough v. Mazda Motor Corp.*, No. CIV A 3:09-CV-469-M, 2009 WL 1033334, at *2 (N.D. Tex. Apr. 15, 2009) (ordering plaintiff to serve Japanese defendant within sixteen weeks); *Prem Sales*, 494 F. Supp. 3d at 420 (recommending that service on Chinese defendant be accomplished within twenty weeks in light of the global pandemic and that plaintiff file a status update within ninety days).

And, so, the undersigned recommends the following deadlines: (1) service under the Hague Convention within 16 weeks; and (2) filing a status update within 90 days informing the Court of BuDhaGirl's progress and any anticipated delays in executing service.

**Recommendation**

The Court should deny BuDhaGirl's Motion for Default Judgment [Dkt. No. 8] and its alternative request for a court order authorizing service of Defendants via e-mail. The undersigned recommends that the district judge order BuDhaGirl to immediately commence efforts to serve Defendants under the Hague Convention, in accordance with Federal Rule of Civil Procedure 4(f)(1), to accomplish service within 16 weeks of the date of any order adopting this FCR, and to file a status update within 90 days of that same order.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: May 21, 2025

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE